No. 14529

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

IN RE THE MATTER OF THE ADOPTION OF
BGB, a minor.

_____

Appeal from: District Court of the Eighth Judicial District,
Hon. Joel G. Roth, Judge presiding.

Counsel of Record:

For Appellant:

Robert Tucker argued, Great Falls, Montana

For Respondent:

William R. Baldassin argued, Missoula, Montana
Carroll C. Blend, Great Falls, Montana

_____

Submitted: March 19, 1979

Decided: SEP 13 1979

Filed: SEP 13 1979

_Thomas J. Kearney_
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The natural mother appeals from an order of the Cascade County District Court refusing to set aside a parental release order entered under the Uniform Parentage Act. This order approved a release of permanent custody from the mother to the prospective adoptive parents, and further permitted them to start adoption proceedings in Missoula County, the county of their residence.

The issues raised in this appeal are made more confusing by the fuzzy and incomplete state of the record at the District Court level. Moreover, the parties rely on broad factual statements in their appellate briefs, many of which have no support in the record. Because this case is not technically ripe for review on the merits, this Court should remand for a factual determination as to the voluntariness of the parental release before we decide any of the issues raised. But the nature of this case requires us, we believe, to decide those legal issues which can be decided without a factual determination, and to remand the case to the District Court for the sole purpose of holding a hearing and entering a ruling on the voluntariness of the parental release. It is conceivable at least, that depending on the ruling of the District Court, an appeal would not again be taken. On the other hand, if we fail to rule on the legal issues raised here, another appeal would be inevitable.

The essential questions raised involved the relationship between the Uniform Parentage Act (sections 40-6-101 through 40-6-131, MCA) and the Uniform Adoption Act (sections 40-8-101 through 40-8-128, MCA). Original custody of the child and an order allowing the prospective adoptive parents to proceed with adoption, was obtained in Cascade County under the Uniform Parentage Act, and adoption proceedings were later started in Missoula County under the Uniform Adoption Act. Before a final order of adoption was obtained however, the natural mother filed a motion in the Cascade County District Court to set aside the order releasing permanent custody to the prospective adoptive parents and permitting them to start adoption proceedings.

The main dispute is centered around section 40-6-124(7) of the Uniform Parentage Act, which reads as follows:

> "Upon petition of the person or persons who executed the release and of the agency of the State of Montana, licensed adoption agency, or person to whom the child was released, the court with which the release was filed may grant a hearing to consider whether the release should be revoked. A release may not be revoked if the child has been placed for adoption. A verbatim record of testimony related to a petition to revoke a release shall be made." (Emphasis added.)

The thrust of the mother's argument is that the statute requires her before filing an action to set aside a parental release, to first obtain the consent of the prospective adoptive parents, and that such consent would rarely, if ever, be given. She argues that she has by this requirement, been deprived of due process of law because the statute effectively precludes her from contesting the validity of the parental releases. We note here that the mother did not allege in her petition that the parental release was involuntarily obtained. But this failure is

-3-

complicated by a subsequent stipulation entered into by the parties as will be more fully explained as we set forth the facts.

The child was born on May 18, 1978, and on the same day the mother executed a document entitled a relinquishment and consent by natural parents. In addition, the father and his parents (being that he was a minor) executed similar documents on the same day. The releases provided in pertinent part:

> "That she [the mother] intends hereby to, and does, voluntarily and irrevocably relinquish all of her parental rights in and to [the child] to [the prospective adoptive parents], knowing that [the prospective adoptive parents] intend to and shall file a petition for adoption relating to said child."

On the next day, May 19, 1978, the prospective adoptive parents filed the releases in the Cascade County District Court along with a petition asking that all parental rights of the natural parents be terminated, and that the child be committed to the care, custody and control of the prospective adoptive parents. On the same day, the District Court entered an order in accordance with the prayer of the petition. The order also permitted the prospective adoptive parents to start adoption proceedings in Missoula County, the county of their residence, which was, of course, the proper county to bring an adoption proceeding under the Uniform Adoption Act (section 40-8-107, MCA).

Adoption proceedings were started in Missoula County but were halted when the natural mother filed her petition in the Cascade County District Court to set aside the parental release and consent to adopt which she had signed. We note here that the parental release and consent to adopt was contained in one document, which is contrary to the requirements

-4-

stated in section 40-6-124, MCA. We do not consider
this defect, however, to be fatal in the context of this
case.

The mother's petition to set aside the release
alleged only that she had withdrawn her consent because she
had changed her mind and wanted to regain custody of the
child. This allegation was apparently based on the assumption
that she had an absolute right to revoke her parental release,
at least up to the time that the child was formally adopted.
She also alleged venue for court approval of the parental
releases and consent to adopt was based on the adoption
statutes rather than the Uniform Parentage Act, and therefore
that the parental termination petition should have been
filed in Missoula County.

Before the hearing on her petition, a stipulation
signed by lawyers for both sides was filed with the District
Court, which contained the legal issues on which they desired
a ruling. The stipulation also provided, however, that
"all factual issues, including those relating to duress,
fraud, undue influence and best interest, if any, shall be
reserved for hearing at a later date." We read this
provision to mean that the mother did not concede that the
parental releases had been voluntarily obtained. There
is nothing in the record to refute this.

Based upon this stipulation as to legal issues, the
District Court decided all legal issues against the mother,
but went an additional step and concluded that the mother
had "conceded" that the parental release and consent to
adopt was voluntary. Nowhere does the record before us
support this finding. For reasons unknown to this Court,
neither party brought this erroneous finding to the attention

-5-

of the District Court, and the case was then appealed by the mother with the issue of voluntariness left dangling in mid-air. That is the reason we must remand to the District Court for a hearing and ruling on the issue of voluntariness of the parental release.

On the remaining issues, we agree with the essential conclusions of law reached by the District Court in its memorandum opinion and order. Venue was properly in Cascade County under the Uniform Parentage Act for purposes of obtaining an order terminating parental rights and obtaining permission to start adoption proceedings; there is no absolute right to revoke a parental release and section 40-6-124(7), MCA, is constitutional on its face; and section 40-6-124(1), in the context of the facts of this case, permits the release of parental rights to a private "person."

Before proceeding to a discussion of the legal issue, we emphasize that it should have been clear to the parties that the District Court decided the issue of voluntariness of the mother's parental release without a factual foundation in the record. It is clear from the tenor of the memorandum decision of the District Court, that it would have held a hearing on the issue of voluntariness. Had either party brought this erroneous finding to the attention of the District Court all of the issues could now be before this Court for decision. Because we must remand for a hearing on the issue of voluntariness, there is, of course, a distinct possibility that a second appeal will result. We do not encourage this kind of issue splitting as it creates a needless waste of judicial resources. Moreover, in the context of the welfare of the child involved, it is clearly not in its best interest to prolong this litigation.

The litigation has been unnecessarily prolonged by the parties in this case. The cat and mouse game too frequently

fostered by the adversary system has no place in proceedings such as this. It is the duty of the District Court to require the parties to proceedings of this nature to lay all their cards on the table at the commencement of proceedings; and it is further the duty of the opposing lawyers to lay all their cards on the table, regardless of whether the District Court orders them to do so.

We proceed to a discussion of the issues. Venue for terminating parental rights under the Uniform Parentage Act is not specifically provided for in the Act. Only one statute provides guidance as to venue, section 40-6-109, MCA. Read in its entirety, it is clear that it is directed primarily at a proceeding to establish paternity, and not to an action to obtain court approval of a parental release. Thus, we cannot say that the legislature has provided any significant guidance as to the issue before this Court. Nontheless, we conclude that venue under the Uniform Parentage Act was properly in Cascade County.

The child, the natural parents, and the natural grand-parents all resided in Cascade County at the time the releases were obtained and at the time the petition was filed under the Uniform Parentage Act to obtain court approval of the releases. We fail to see how the ends of justice would have been better served by filing the petition in Missoula County, the residence of the prospective adoptive parents. Had this been done, a substantially larger burden would have been placed on those who might wish to contest the validity of the parental releases. Accordingly, we find no error in filing the petition in Cascade County.

Concerning the constitutionality of section 40-6-124(7), MCA, we do not read it as prohibiting an action to contest the voluntariness of the parental releases unless the consent of the person or entity to whom the child has been released

-7-

is first obtained. The statute does not expressly require this reading, and it would be an unreasonable construction to read such requirement into the statute. When read in its entirety, section 40-6-124, MCA, contemplates that the procedure contained in subsection (7) is required only when there is no issue of voluntariness of the parental release. Subsection (1) provides:

> "(1) Any parent or guardian who proposes to relinquish custody of a child for purposes of placing the child for adoption may do so by formally executing a release whereby all parental rights to the child are voluntarily relinquished to an agency of the state of Montana, a licensed adoption agency, or a person." (Emphasis added.)

Clearly, a construction of this section along with subsection (7) of the same statute requires a determination that a strong public policy interest exists surrounding the finality of parental releases, and one who voluntarily signs a parental release cannot willy-nilly revoke that release. The same policy considerations, however, are obviously not operative in a situation involving an involuntary parental release.

If for some reason one seeks to revoke a parental release voluntarily executed, it is in the interest of all concerned that consent to such revocation be obtained by all those who are covered by the terms of the statute. We note, however, that even though all the required consents be obtained, the statute does not require an automatic revocation of the release. It states only that "the district court may grant a hearing to consider whether the releases should be revoked . . ." Obviously, some degree of discretion is left with the District Court to determine what is in the best interests of the child. Assuming a parental release to be

-8-

voluntarily executed, sections 40-6-124(1) and 40-6-124(7), MCA, assure that the status of a child who is the subject of the parental release is not in a state of perpetual flux.

Sections 40-6-124(1) and 40-6-124(7), MCA do not require a conclusion that a parental release allegedly involuntarily executed, cannot be contested unless the consent is first obtained of the person or agency to whom the child has been released. Clearly, the consents are required only when the parental release has been voluntarily executed. We determine therefore, that subsection (7) is constitutional on its face and that the statute reasonably applied, does not require consent of the parties to whom the child has been released before an action can be started alleging an involuntary execution of a parental release.

It is clear that by implication, the District Court reached the same conclusion that we reached. However, its decision went the additional step of finding that the release had been voluntarily executed because the mother had so "conceded." The record before us does not reveal such concession and for this reason, we must remand for a hearing on the issue of voluntariness of the parental release.

A final issue raised by the mother is that section 40-6-124(1), MCA, does not permit the release of parental custody to "a person" for purposes of adoption, and therefore that the court had no authority to terminate parental custody of the mother in favor of the prospective adoptive parents. The mother relies on Montana Department of Social and Rehabilitation Services v. Angel (1978), ____ Mont. ____, 577 P.2d 1223, 35 St.Rep. 532. But she misreads this case as well as the statute. Section 40-6-124(1), MCA, provides that the release may be executed "to an agency of the state of Montana, a licensed adoption agency, or a person." (Emphasis added.)

-9-

Here the parental releases were executed directly to the prospective adoptive parents; they did not serve as a conduit for placing the child with someone else for permanent adoption. In the Angel case, the persons receiving the child from the natural parent served only as a conduit to later place the child with someone else for permanent adoption. It was this practice that we condemned and held to be in violation of the spirit of the statutes involved. Those factors do not exist in this case.

Elsewhere in this opinion, we expressed our dissatisfaction with the status of this case on appeal. Because of the stipulation reserving the issue of voluntariness for a later determination, this case was not ready for appellate review within the meaning of Rule 1(a), Mont.R.App.Civ.P. Though the parties knew or should have known the case was in this status, nonetheless, the mother appealed with the complete acquiescence of the prospective adoptive parents. Moreover, once the notice of appeal was filed, neither party informed this Court that the issue of voluntariness had been specifically reserved for a later hearing and determination.

Implicit in the mother's argument in her brief is an acknowledgement that only legal points were decided by the District Court, and that factual determinations such as voluntariness, remained for decision. On the other hand, the prospective adoptive parents assert that the District Court decided, and properly so, the issue of voluntariness of the parental release. Their positions compared with the precise words of the stipulation are revealing.

The stipulation signed by counsel for both parties, read:

"That all factual issues, including those relating to duress, fraud, undue influence and best interest, if any, shall be reserved for hearing at a later date."

-10-

By this stipulation, we have no doubt that the parties realized the issue of voluntariness of the parental release was not to be decided at the August 8 hearing.

Without quoting from this stipulation, or referring this Court to the precise stipulation in the District Court file, the mother states in her brief:

> "Attorneys for both parties, prior to hearing, had stipulated that the hearing be confined to a discussion and determination of legal issues only, and therefore no testimony or other evidence was presented."

Clearly, by taking this position, counsel for the mother should have recognized that the case was prematurely appealed, and therefore should have moved to dismiss the appeal without prejudice.

On the other hand, counsel for the prospective adoptive parents states in his brief in reference to the stipulation:

> "Prior to hearing, counsel for both parties, determining that there was no factual issues concerning fraud, duress, or undue influence in connection with the execution of the relinquishments and consents, stipulated as to the legal issues to be argued and decided at the August 8 hearing."

If there was an additional stipulation other than the one we have quoted, counsel did not quote from it nor refer this Court to it. Rather, he relies in his brief on the factual determination by the District Court that the parental release was voluntarily executed, without any evidentiary foundation whatsoever. There is nothing in the record whereby the parties stipulated to the nonexistence of factual issues concerning fraud, duress, or undue influence in relation to the execution of the parental release.

We recognize, of couse, that counsel representing the mother in this appeal is not the same counsel who handled her case at the trial court level, and that he entered this case after the notice of appeal had been filed. But once he had

-11-

determined the status of the case and what had and had not been decided at the District Court level, it was his duty to determine if the case was then properly on appeal. If, for example, he had concluded that the District Court had not decided all issues necessary to a final resolution of this case, it would have been a simple matter to move this Court to dismiss this appeal without prejudice so that all issues could first be decided at the District Court level.

Likewise, counsel for the prospective adoptive parents could have filed an appropriate motion to dismiss because all issues necessary to an appeal had not been decided by the District Court. But he did not do so. Rather, without any basis in the record before this Court, he repeatedly relied on the District Court's determination that the parental release had been voluntarily executed. But nowhere in his brief did he establish a factual foundation for such a determination by the District Court. Indeed, though the District Court decision was based on the mother's "conceded" voluntary parental release, not once did counsel refer this Court to any place in the record where this concession appears.

It should have been clear to both parties that the District Court decision basing the issue of voluntariness on the mother's concession, had no basis in the record. (The August 8 hearing on the legal issues was had without the presence of a court reporter, and we find no concessions in the District Court file.) Though counsel for the mother entered this case after filing of the notice of appeal, and therefore he could not have moved the District Court to reconsider the basis of its opinion on the issue of voluntariness of the parental release, this did not prevent him from moving this Court for a motion to dismiss the appeal and to remand the case to the District Court for a hearing on the issue of voluntariness.

-12-

Too often this Court is confronted with cases that are not ready for appellate review within the meaning of the rules, but where the opposing parties do not bring this crucial fact to our attention. We often do not discover this until we are deeply into the process of review and indeed often in the opinion-writing stage. We cannot and will not tolerate this state of affairs.

If the case is not ready for review, it should not be appealed. If for some reason it is appealed prematurely, it is the duty of the parties to bring this to our attention by an appropriate motion to dismiss so that it can be remanded to the District Court. This Court does not have the time and the resources to be compelled to independently search the record to determine if all essential issues have first been decided at the District Court level.

The exception to the normal rule is, of course, a question that is certified to us under Rule 54(b), Mont.R.Civ.P. But we do not encourage use of this rule unless it is clearly warranted by the nature of the case and the legal issues presented. It should not be used as a method to sidestep the normal appellate process except in extreme cases justifying its use. If Rule 54(b) is used as a vehicle to take an appeal which would be otherwise premature, we expect, as part of that process, a full explanation by the district judge who certifies the case to us, and a full explanation by the parties to the appeal.

For the foregoing reasons, the order of the District Court is affirmed in part, but vacated and remanded for a hearing and ruling on the issue of the voluntariness of the parental release.

Daniel J. Shea

Justice

-13-

We Concur:

_Frank I. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_John C. Sheehy_
Justices