No. 14759

IN THE SUPREME COURT OF THE STATE OF MONTANA

---

IN RE THE GUARDIANSHIP OF P.J.D.,

a minor.

---

Appeal from: District Court of the Eighth Judicial District,
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Richard Ganulin argued, Great Falls, Montana

For Respondent:

Dennis Conner argued, Great Falls, Montana
Gary Zadick argued, Great Falls, Montana

---

Submitted: September 14, 1979

Decided: SEP 2 5 1979

Filed: SEP 2 5 1979

Thomas J. Kaufman
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

On April 24, 1969, P.J.D. was declared a dependent and neglected child. The Division of Child Welfare Services of the Department of Public Welfare was awarded permanent legal custody with the right to consent to the adoption of the youth. On May 7, 1969, P.J.D. was placed in the foster care of the appellants herein. She has resided with them since that time. On November 17, 1974, P.J.D. was permanently placed with the appellants.

P.J.D. has been disabled with cerebral palsy since birth. Appellants have been approved as adoptive parents; however, they are financially unable to adopt P.J.D. On June 27, 1978, appellants filed a petition in the District Court of the Eighth Judicial District, County of Cascade, requesting that they be appointed guardians of P.J.D., their permanent foster child. The Department of Social and Rehabilitation Services (SRS) made a motion to dismiss the petition on the grounds that the court lacked subject matter jurisdiction and that the petition failed to state a claim upon which relief could be granted. On January 22, 1979, the District Court granted SRS's motion to dismiss and, on February 8, 1979, denied appellants' motion to amend the conclusions of law by vacating the hearing on the motion. Appellants appeal from these orders of the District Court.

The sole issue presented to this Court is the interpretation of section 72-5-222(1), MCA, and section 72-5-225(2), MCA, to determine (1) whether the District Court has jurisdiction to appoint permanent foster parents as guardians of a child in the legal custody of SRS, and (2) whether SRS ever had parental rights over P.J.D. and, if so, whether these rights have been suspended by circumstances.

Appellants' principal arguments can be summarized as follows:

(1) The term "parental rights" as used in section 72-5-222(1), MCA, refers to the rights of the natural parents, which in this case were terminated on April 24, 1969. The foster parents have the right to custody, companionship and services of the child and control her religion, education and discipline.

(2) SRS's "parental rights of custody" were terminated by the permanent foster placement with appellants. Section 72-5-222(1), MCA, and ARM §46-2.6(2)-S640(3)(c)(i).

(3) Appellants request this Court to limit its decision to the facts of this case and appoint them guardians.

The District Court's order dismissing the petition is founded upon its interpretation of sections 72-5-222(1) and 72-5-225(2), MCA. Section 72-5-222(1) states:

> "The court may appoint a guardian for an unmarried minor if all parental rights of custody have been terminated or suspended by circumstances or prior court order." (Emphasis supplied.)

Section 72-5-225(2) provides:

> "Upon hearing, if the court finds that a qualified person seeks appointment, venue is proper, the required notices have been given, the requirements of 72-5-222 have been met, and the welfare and best interests of the minor will be served by the requested appointment, it shall make the appointment. In other cases the court may dismiss the proceedings or make any other disposition of the matter that will best serve the interest of the minor." (Emphasis supplied.)

Resolution of this case rests on the construction placed on the above statutes and more particularly, on this Court's interpretation of the phrase "all parental rights of custody."

Although there is no Montana case law which for our purposes specifically interprets the above statutes, appellants cite and rely on a recent Montana case, In re Guardianship of Evans (1978), ____ Mont. ____, 587 P.2d 372, 35 St.Rep. 1768, as being dispositive here. A close look at Evans reveals it is distinguishable from the instant case. The problem of statutory interpretation was not reached in Evans.

Appellants cite various cases for the proposition that the District Court should appoint a guardian whenever necessary or convenient for the best interest of the child: In re Henwood's Guardianship (1958), 49 Cal.2d 639, 320 P.2d 1; San Diego County Dept. of Pub. Welf. v. Superior County (1972), 101 Cal.Rptr. 541, 496 P.2d 453; In re C.M.D. (Del. 1969), 256 A.2d 266. These cases, however, are easily distinguishable. They involve different statutory guidelines for guardianship than those we are considering in Montana. There are, however, two cases from Arizona construing that state's guardianship statutes which are identical to Montana's.

The first is Morales v. Glenn (1977), 114 Ariz. 327, 560 P.2d 1234. In Morales the custody of the two minor children involved was, pursuant to a divorce decree, lodged in the father. In 1976 the father died, and the paternal grandparents assumed custody of the two children. A request for custody by the mother was made to the grandparents, which request was refused. Thereafter, the grandmother petitioned for guardianship of the children alleging that all parental rights of custody had been terminated by court order. The mother regained custody of the children through a habeas corpus proceeding and moved to dismiss the guardianship proceedings. This motion was denied, and the mother

appealed. The Arizona court found the mother's parental rights of custody had not been terminated by the divorce decree or circumstances and held the lower court erred in not granting the mother's motion to dismiss. The court went on to state: "The Probate Court does not have jurisdiction to award custody when custody by operation of the law . . . or by court order . . . has already been determined." Morales, 560 P.2d at 1237, 1238.

In McNeal v. Mahoney (1978), 117 Ariz. 543, 574 P.2d 31, the court, citing Morales , held that where the father's custody rights had not been terminated by circumstances or by his conditional delivery of the child to grandparents, the appointment of the grandparents as temporary guardians for the child was improper and "the trial judge was without authority to appoint even a temporary guardian for Cindy." McNeal, 574 P.2d at 35.

In the instant case the custody of P.J.D. was established by court order on April 24, 1969, when permanent legal custody with right to consent to adoption of P.J.D. was awarded to SRS. Permanent custody of a child is defined in ARM §46-2.6(2)-S650(1)(b) as:

> ". . . the legal status created by an order of the youth court, that gives a person or agency the right and duty to the care, custody and control of a youth with the authority to consent to the adoption of said youth. This severs the rights and duties of the natural parent(s) to the child."

Further, "[t]ransfer of legal custody of a child shall include guardianship of any assets or estate of the child. . ." Section 41-3-406(4), MCA.

In effect, by making such an order, the court grants all the rights of the natural parent to SRS. SRS, thus, becomes responsible for the care, feeding, and control of

the child. To provide for the best interests of and protect the welfare of a child, SRS attempts to place the child "in a stabilized setting such as an adoptive home or permanent foster care home which will promote the development of a psychological parent-child relationship." ARM §46-2.6(2)-S640(3)(c)(i).

As unacceptable as it may sound, some of the children will never be adopted. Instead of having to institutionalize these children, SRS licenses foster parents, people who want to care for children but are either ineligible to adopt or cannot afford to adopt. When a child is placed in permanent foster home care, as P.J.D. was here, SRS provides certain services including: counseling services to child and foster parents; referral services when appropriate; arrange for continued education of the child as appropriate to his age and abilities; arrange for medical services for the child; and open foster home payments for board, room and personal necessities. ARM §46-2.6(2)-S6020. These services are in keeping with the duty placed upon SRS when it is granted legal custody of a child. The responsibilities and duties charged to SRS are similar to the ones charged to natural parents. The only difference is that to care for a child, SRS, in promoting a natural instead of institutional environment for the child, must assign the everyday duties of care and feeding to foster parents like the appellants. By such assignment, however, SRS does not forego any of the duties it was charged by court order to carry out; it merely assigns the duties so they will be carried out in a more natural environment. SRS is still responsible for the youth's care and must keep a constant vigil to assure that the youth's best interests are being served. This duty is so strict

because, in effect, SRS is charged with overcoming any ill-effects the deprivation of the child's natural parents may have had on the child.

While it is true that the permanent foster parents, when placed in this situation, assume the role of parents and can in fact become the psychological parents of the child, this does not change the legal relationship between the child and SRS. "A child cannot be adversely possessed as can a piece of real property." In the Matter of Fish (1977), ____ Mont. ____, 569 P.2d 924, 928, 34 St.Rep. 1080, 1085.

Appellants argue that the phrase "all parental rights of custody" from section 72-5-222(1), MCA, was intended to encompass only "parental rights" of natural parents and therefore, the rights granted to SRS when it was awarded permanent custody of P.J.D. are incapable of the District Court's jurisdiction to appoint a guardian. This contention is not supported by the facts or by the law.

In light of the duties and responsibilities placed on SRS, there can be little doubt that it was awarded parental rights to custody similar to that of a natural parent. There also can be little doubt that the phrase "all parental rights of custody" includes the rights awarded to SRS. This is the logical result. To construe the above phrase to include only natural parents would create problems that appellants fail to take into account. If only natural parents' rights were protected, it would mean that a guardian could be appointed for a child with adoptive parents, solely because the natural parents' rights had been terminated. One can hardly argue that the legislature intended such a result. SRS, in reality, takes the place of the

adoptive parent by seeing that the child's needs are taken care of, albeit by foster parents.

The phrase "parental rights of custody" therefore includes the parental rights of both adoptive parents and SRS when it is awarded custody.

The rights held by SRS here are permanent in nature and have not been terminated. This being the case, the court was without jurisdiction to appoint a guardian under section 72-5-225(2), MCA. It did not err in dismissing appellants' petition.

One other point needs to be discussed. Because the parental rights of P.J.D. were not terminated, the last sentence of section 72-5-225(2) may come into play. This sentence reads: "In other cases the court may dismiss the proceedings or make any other disposition of the matter that will best serve the interest of the minor." (Emphasis added.) The language of this sentence indicates that it is within the court's discretion in such a situation to either dismiss the proceeding or make some other disposition. Here, the court chose to dismiss the proceeding. In the absence of abuse of discretion, this Court will not alter such a decision. In re Gore (1977), ____ Mont. ____, 570 P.2d 1110, 34 St.Rep. 1179.

In the instant case, an attorney was appointed to protect P.J.D.'s interests. In his brief to this Court, he states:

> "It appears to me that the division of authority between the foster parents and the Department of Social and Rehabilitation Services in the P.J.D. matter has been sufficiently compatible so that the best interests of the child have been looked after. The department has provided all medical care, financial assistance and social services support to P.J.D. that have appeared to be necessary."

-8-

We have no fact record in this case, so we have no indication that SRS will remove the child from its foster parents. Nor is there any indication that the child should be receiving additional care which SRS refuses to provide. It also appears that SRS has agreed to grant authority to the foster parents to authorize emergency medical treatment. Apparently, the best interests of the child are being served here.

This is not to say that there are no long term foster placements, such as the case here, in which changes of status may be desirable. But to interpret the statute as a blanket permission for such is overlooking the possible mischief involved in short term cases by the less sincere of those among us. Therefore, any change in the rules as we have applied them must come from the legislature after long and serious consideration and adequate safeguards are installed for the benefit of the foster children.

The judgment of dismissal of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices