No. 14692

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

IN THE MATTER OF THE ADOPTION OF T.M.M.,

a Minor.

_____

Appeal from:   District Court of the Fourth Judicial District,
               Honorable E. Gardner Brownlee, Judge presiding.

Counsel of Record:

      For Appellant:

            William Hutchison argued, Legal Services, Helena,
               Montana

      For Respondent:

            Hon. Mike Greely, Attorney General, Helena, Montana
            Christian, McCurdy, Ingraham and Wold, Polson, Montana
            Clinton J. Fisher argued, Polson, Montana

_____

                        Submitted:  September 24, 1979

                         Decided:  MAR 2 4 1980

Filed:

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

The natural mother of a minor child appeals from a judgment of the Lake County District Court dismissing her challenge to an adoption proceeding.

She raises several issues in this appeal, but our decision turns on our conclusion that the prospective adoptive parents violated the Interstate Compact on Placement of Children, which therefore constituted an illegal placement of the child for purposes of adoption. We note, furthermore, that the natural mother was denied a hearing on the question of voluntariness as set forth in the case of In Re Adoption of BGB (1979), ___ Mont. ____, 599 P.2d 375, 36 St.Rep. 1638. Our decision here, however, obviates the need for a hearing on the question of voluntariness of the parental consent.

TMM (hereafter referred to as child) was born on July 22, 1972, in Boone County, Missouri. On January 9, 1978, the natural mother executed a "parent's consent" in Jackson, Mississippi, which was provided, witnessed and notarized by Nancy L. Sanders, a Mississippi resident and relative of the prospective adoptive parents. That document released all of the natural mother's parental rights in the child and allowed for adoption by the prospective adoptive parents, residents of Montana. The prospective adoptive parents traveled from Montana to Mississippi, picked up the child from Nancy Sanders, and following a brief stay in Mississippi, returned to Montana with the child.

Both Montana and Mississippi have adopted and enacted the Interstate Compact on Placement of Children (hereafter referred to as Compact), and are party states to the Compact. Section 41-4-101, et seq., MCA; section 43-18-1, et seq., Miss. Code Annot. The basic policy behind the Compact is provided in Article I, which states:

> "It is the purpose and policy of the party states
> to cooperate with each other in the interstate
> placement of children to the end that:

-2-

"(1) each child requiring placement shall receive the maximum opportunity to be placed in a suitable environment and with persons or institutions having appropriate qualifications and facilities to provide a necessary and desirable degree and type of care;

"(2) the appropriate authorities in a state where a child is to be placed may have full opportunity to ascertain the circumstances of the proposed placement, thereby promoting full compliance with applicable requirements for the protection of the child;

"(3) the proper authorities of the state from which the placement is made may obtain the most complete information on the basis of which to evaluate a projected placement before it is made;

"(4) appropriate jurisdictional arrangements for the care of children will be promoted."

On April 10, 1978, the prospective adoptive parents filed a petition in Lake County District Court for adoption. On April 14, 1978, the trial court, upon a motion of the prospective adoptive parents and their presentation of the "parent's consent" pursuant to section 40-6-124(5), MCA, entered an order terminating the parental rights of the natural mother. The order was entered ex parte, without notice or an opportunity for a hearing being given to the natural mother.

On May 10, 1978, the natural mother first appeared in Montana in the instant action and filed a "withdrawal of document" with the trial court, repudiating her previously executed "parent's consent". On September 25, 1978, the prospective adoptive parents moved to dismiss the natural mother from the adoption proceeding due to lack of standing based upon the trial court's order, entered April 14, 1978, terminating the parental rights of the natural mother. On December 13, 1978, the District Court issued an order granting the motion to dismiss the natural mother's challenge to the adoption for lack of standing. The District Court granted a stay in the adoption proceeding pending the outcome of the natural mother's appeal of the order of dismissal.

The natural mother contends that the prospective adoptive parents ignored, or failed to follow the express provisions of the Compact, resulting in the illegal placement of the child in Montana. The prospective adoptive parents argue, however, that the Compact does not apply because no sending agency was involved in the placement of the child and that they brought the child

-3-

into Montana by virtue of the parental consent signed by the natural mother. The prospective adoptive parents further argue that it is of no consequence that the technical procedures, as set forth in the Compact, may not have been followed; but rather it is important that they have acted in the best interests of the child, and they have done so by seeking this state's approval, supervision, and investigation concerning the adoption.

Article II of the Compact defining child, sending agency, receiving state and placement clearly shows the applicability of the Compact in the instant case. Of particular relevance in the instant case, Article II(2) defines "sending agency" as ". . . a person . . . which sends, brings, or causes to be sent or brought any child to another party state;" and Article II(3) defines "receiving state" as ". . . the state to which a child is . . . brought . . . by . . . private persons . . . for placement with . . . persons." It is undisputed that the prospective adoptive parents brought the child, age 7, from Mississippi to Montana for placement with themselves in furtherance of their ultimate desire to adopt the child. The prospective adoptive parents made arrangements for, and have cared for the child in their family since January 1978.

Article III of the Compact contains requirements which must be complied with in order to effectuate a legal placement. Article III(1) provides:

> "No sending agency shall send, bring, or cause
> to be sent or brought into any other party state
> any child for placement in foster care or as a
> preliminary to a possible adoption unless the
> sending agency shall comply with each and every
> requirement set forth in this article and with
> the applicable laws of the receiving state
> governing the placement of children therein."

Article III(1) clearly mandates compliance with each and every requirement of Article III. Article III(2) provides that:

> "Prior to sending, bringing, or causing any
> child to be sent or brought into a receiving
> state for placement in foster care or as a
> preliminary to a possible adoption, the sending

agency shall furnish the appropriate public
authorities in the receiving state written
notice of the intention to send, bring, or place
the child in the receiving state. The notice
shall contain:

"(a)  the name, date, and place of birth of the
child;

"(b)  the identity and address or addresses of
the parents or legal guardian;

"(c)  the name and address of the person, agency,
or institution to or with which the sending agency
proposes to send, bring, or place the child;

"(d)  a full statement of the reasons for such
proposed action and evidence of the authority
pursuant to which the placement is proposed to
be made."

The prior written notice requirement is designed to provide the

proper state authorities in both states with knowledge of, and

background information concerning the proposed relocation of a

minor child.  Prior written notice provides the proper authorities

in both states with an opportunity to investigate the facts

surrounding the proposed placement in order to determine whether

the proposed placement is in the best interests of the child.

Under section 41-4-103, MCA, the Montana Department of

Social and Rehabilitation Services (hereafter referred to as SRS)

is deemed to be the "appropriate public authorities" for purposes

of the operation of Article III of the Compact.  Under Article

III(2) of the Compact and section 41-4-103, the prospective

adoptive parents were required to furnish the SRS with written

notice of their intention to bring the child to Montana, as a

preliminary measure to adoption, prior to the time when they did

actually bring the child to Montana.

The prospective adoptive parents clearly violated the

requirements of Article III(2) of the Compact.  The prospective

adoptive parents first notified the SRS after they had brought

the child to Montana.  The prospective adoptive parents brought

the child to Montana in January 1978; and on April 10, 1978, they

-5-

first contacted the SRS and requested a report regarding the adoption. The SRS waived a full adoptive investigation into the adoption of the child, and filed a report with the trial court on June 26, 1978.

Under Article III(4), the prospective adoptive parents could not legally bring the child into Montana until the SRS had notified them, in writing, that the proposed placement did not appear to be contrary to the interests of the child. As previously indicated, the SRS wasn't notified until after the fact. Therefore, the prospective adoptive parents also failed to comply with Article III(4) of the Compact, which provides that:

> "The child shall not be sent, brought, or caused to be sent or brought into the receiving state until the appropriate public authorities in the receiving state shall notify the sending agency, in writing, to the effect that the proposed placement does not appear to be contrary to the interests of the child."

In a final attempt to avoid the operation of the Compact, the prospective adoptive parents contend that the natural mother caused the child to be brought to Montana by the prospective adoptive parents; and that the natural mother named and appointed them as nonagency guardians, thus precluding the application of the Compact. Article VIII(1) of the Compact provides that the "compact shall not apply to: (1) the sending or bringing of a child into a receiving state by his parent . . . and leaving the child with any such relative or nonagency guardian in the receiving state."

Article VIII(1) does not apply, however, because the prospective adoptive parents are not relatives of the natural mother, nor are they nonagency guardians. The prospective adoptive parents obtained custody of the child by virtue of the natural mother's "parent's consent"; however, they did not become "nonagency guardians." The prospective adoptive parents were never appointed

-6-

as the child's guardians through a judicial decree entered prior to the time that they brought the child to Montana from Mississippi, nor subsequently while in Montana. There is a major distinction between custody and guardianship. In Montana, a person is appointed the guardian of a minor child through judicial decree following compliance with the statutory procedures. See section 72-5-201, et seq., MCA; In Re Guardianship of P.J.D. (1979), ____ Mont. ____, 600 P.2d 1170, 36 St.Rep. 1670.

The natural mother contends that failure to comply with the terms and requirements of the Compact constitutes an illegal placement of the child, and further contends that Article IV of the Compact provides sanctions for illegal placements. She requests that this Court revoke her previously executed "parent's consent" as an appropriate sanction for the illegal placement of the child in the instant case. The prospective adoptive parents contend, on the other hand, that the Compact does not contemplate the dismissal of an adoption proceeding for technical violations of procedures.

By virtue of the failure of the prospective adoptive parents to comply with the Compact, the placement of the child with the prospective adoptive parents in Montana constituted an illegal placement under the provisions of the Compact. Article IV of the Compact provides the penalty for an illegal placement. Article IV provides that:

> "The sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of this compact shall constitute a violation of the laws respecting the placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state. Such violation may be punished or subjected to penalty in either jurisdiction in accordance with its laws. In addition to liability for any such punishment or penalty, any such violation shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the sending agency which empowers or allows it to place or care for children."

The "parent's consent", executed by the natural mother, is the "legal authorization" held by the prospective adoptive parents. Thus the failure of the prospective adoptive parents to comply with the terms and procedures of the Compact constitutes full and sufficient grounds for the revocation of the "parent's consent."

The order of the District Court, entered April 14, 1978, terminating the natural mother's parental rights is vacated. The cause is remanded with instructions to dismiss the adoption proceeding instituted by the prospective adoptive parents, and to take appropriate measures for the end result of placing custody with the natural mother.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-8-