(949 P.2d 1155)
No. 79,034

In the Matter of the Adoption of A.M.M. and A.N.M.

Opinion filed December 5, 1997.

*Austin K. Vincent*, of Topeka, and *Martin W. Bauer* and *Ellen Tracy*, of Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., of Wichita, for appellants.

*Stephanie A. Mathews*, *Shelley Hickman Clark*, and *Sarah Donley*, legal intern, of Douglas County Legal Aid Society, Inc., of Lawrence, for appellee.

Before RULON, P.J., ELLIOTT, J., and ROGG, S.J.

ROGG, J.: C.P. and J.P., the prospective adoptive parents, appeal the district court's order granting the natural mother's motion to revoke her consent and dismiss the adoption petition based on failure to comply with the Interstate Compact on the Placement of Children (ICPC), K.S.A. 38-1201 *et seq.*

### Factual background

On May 20, 1996, E.P. gave birth to twins, A.M.M. and A.N.M. At the time of their births, E.P. resided in Kansas City, Kansas. On May 24, 1996, E.P. moved to Kansas City, Missouri. Prior to the birth of the twins, E.P. had asked appellants, her former foster parents, if they would consider adopting the twins.

On December 15, 1996, E.P. moved to a different location in Kansas City, Missouri; she moved there with the twins and her two older children. She lived at this second location until February 12, 1997, at which time she moved to Lawrence.

While E.P. lived in Missouri, her two older children attended Missouri schools. She acquired Missouri telephone service and a Missouri bank account. She applied for and received Missouri public assistance. E.P. testified that at the time she moved to Missouri in May 1996, she intended to stay in Missouri, and during the period she was there, she considered herself a Missouri resident.

E.P. had several conversations with appellants about adopting the twins, and on January 17, 1997, E.P. attended a meeting with her former foster father, C.P., and his attorney to get some general adoption information. E.P.'s residence was discussed and it was noted that if she were a resident of Missouri and if she proceeded with the adoption, the issue of the ICPC would have to be addressed, but if she were a Kansas resident, the ICPC would not apply.

C.P. testified that the parties discussed what steps could be taken in order for E.P. to establish residency in Kansas because the Kansas adoption procedure was less complicated. C.P. claimed that E.P. was going to move into a trailer he owned in Kansas and get a job in Lawrence.

E.P. testified that on January 19, 1997, she called appellants in Kansas and asked whether they would take care of the twins because she was under a lot of stress. They agreed and picked up the twins in Missouri and brought them back to their home in Kansas. The parties agreed that on that date, the placement with appellants was not for the purpose of an adoption.

On January 21, 1997, E.P. went to appellants' attorney's office in Kansas and signed consents to adoption for A.M.M. and A.N.M. On the forms, she listed her residence as Missouri, and she returned to Missouri after signing the forms. Then on January 22, 1997, E.P. went back to Kansas to sign power of attorney documents to allow appellants to give medical care to the twins.

On February 12, 1997, E.P. entered into a lease agreement with her former foster father to rent a trailer home in Kansas. She en-

rolled her children in school and applied for Kansas welfare benefits. By February 20, 1997, R.W., a potential father of the twins, had indicated his willingness to sign a consent for A.M.M.'s and A.N.M.'s adoption. The actual consent was not signed until February 28, 1997, however, because R.W. was involved in an accident. P.S., another potential father, signed a consent on February 25, 1997.

Between February 23 and February 25, E.P. communicated to appellants that she did not want to go through with the adoption. Appellants, however, proceeded to file a petition for adoption on February 26, 1997.

On February 27, 1997, E.P. filed a written revocation of consent and a petition for declaratory judgment seeking a declaration that her consent be revoked. On March 25, 1997, E.P. filed a motion to dismiss, claiming that the ICPC had not been complied with and, therefore, the petition should be dismissed.

On April 10, 1997, the district court held a hearing on the limited issue of noncompliance with the ICPC. After the hearing, the district court granted E.P.'s motion to dismiss. The court found that, at the time the twins were transferred to appellants, E.P. was a resident of Missouri and, therefore, the ICPC applied. The court further found the parties did not comply with the ICPC, and it revoked E.P.'s consent and dismissed the petition for adoption.

### Placement for adoption

A pivotal issue concerns which date should be used to determine the natural mother's residency at the "time of placement for adoption" and, thus, whether the ICPC applies. The district court made the following finding regarding E.P.'s residency: "On January 21, 1997, [E.P.], still a resident of Missouri, came to Kansas and signed consents to the adoptions." The district court used January 21, 1997, as the date to determine residency under the ICPC.

Appellants claim that the district court looked at the wrong date to determine E.P.'s residency. They claim that the consent date was not the proper date to consider but, rather, February 25, 1997, should have been used because that was the date the "conditional" consent was satisfied, and on that date E.P. was a resident of Kan-

sas. Appellants claim that until the conditions for the use of E.P.'s consents were satisfied, those being the date when both fathers indicated their support of the adoption and the uncertainty about E.P.'s residency had been resolved, it was not possible to determine the relationship of the parties or properly determine the residence of the birth mother.

K.S.A. 38-1202, art. III(a) states:

"No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for *placement in foster care or as a preliminary to a possible adoption* unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein." (Emphasis added.)

On January 19, 1997, appellants took physical custody of A.M.M. and A.N.M. At that point, all parties conceded and the district court found that the placement of the twins with appellants was *not* for the purpose of adoption. On January 21, 1997, E.P. signed consents to adoption in which she relinquished custody of A.M.M. and A.N.M. The consents specifically stated that she consented and agreed to the adoption of A.M.M. and A.N.M. by appellants. The consents further waived notice of any future hearings concerning the adoption. There is nothing in the ICPC requiring that a placement be unconditional before the ICPC comes into effect, and appellants cite no authority for such proposition. Courts in other jurisdictions have found the ICPC came into effect prior to the adoption petition being filed. See *In re Adoption No. 10087*, 324 Md. 394, 597 A.2d 456 (1991) (ICPC came into effect, when the child was transported across state lines for the purpose of adoption); *In the Matter of T.M.M.*, 186 Mont. 460, 461-62, 608 P.2d 130 (1980).

The purpose of the ICPC is to protect the interests of children who fall within its parameters. K.S.A. 38-1202, art. I.

K.S.A. 38-1202, art. III(b) provides:

"Prior to sending, bringing or causing any child to be sent or brought into a receiving state for placement in foster care or as a preliminary to a possible adoption, the sending agency shall furnish the appropriate public authorities in the receiving state written notice of the intention to send, bring, or place the child in the receiving state. The notice shall contain:

"(1) The name, date and place of birth of the child.

"(2) The identity and address or addresses of the parents or legal guardian.

"(3) The name and address of the person, agency or institution to or with which the sending agency proposes to send, bring, or place the child.

"(4) A full statement of the reasons for such proposed action and evidence of the authority pursuant to which the placement is proposed to be made."

The purpose of the statutory prior notice provision was discussed in *T.M.M.*, 186 Mont. at 464:

"The prior written notice requirement is designed to provide the proper state authorities in both states with knowledge of, and background information concerning the proposed relocation of a minor child. Prior written notice provides the proper authorities in both states with an opportunity to investigate the facts surrounding the proposed placement in order to determine whether the proposed placement is in the best interests of the child."

Once E.P. signed consents for adoption of the twins, the status of appellants changed from that of providing respite care to that of placement preliminary to a possible adoption, and the ICPC came into effect.

If the date which appellants argue was used rather than the date the children were considered placed preliminary to an adoption, article III(a) would be rendered meaningless because a child could be placed with a party preliminary to an adoption prior to all the conditions being fulfilled.

It is the placement of a child as preliminary to a possible adoption which triggers the ICPC. The district court properly considered January 21, 1997, as the date on which to determine E.P.'s state of residency because that is the date the purpose of the placement of A.M.M. and A.N.M. became clear.

Appellants argue that even if the January 21, 1997, date was proper, E.P. lacked the requisite intent to remain in Missouri on that date. The district court made a finding that on that date, E.P. was a resident of Missouri.

"Where the trial court has made findings of fact and conclusions of law, the function of an appellate court is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. Substantial evidence is evidence which possesses both relevance and substance and which furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way,

'substantial evidence' is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion. [Citation omitted.]" *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P.2d 929 (1993).

" '[R]esidence' requires two elements: (1) bodily presence at the location, and (2) intent to remain there either permanently or for an indefinite period." *Teter v. Corley*, 2 Kan. App. 2d 540, 543, 584 P.2d 651 (1978).

At the hearing before the district court, E.P. testified that on May 26, 1996, she moved to Kansas City, Missouri, and lived there until February 12, 1997. She claimed that when she moved there, she intended to stay there. She enrolled her two older children in Missouri schools. She had telephone service at her Missouri residence and had a Missouri bank account. She also applied for and received public assistance from the State of Missouri. She used her Missouri address as her residence on the consent forms and returned to Missouri after signing the forms.

"An appellate court does not reweigh the testimony or pass on the credibility of witnesses but accepts as true the evidence and all inferences to be drawn therefrom to support the findings of the trial court and disregards any conflicting evidence or other inferences that might be drawn therefrom." *State v. Orr*, 262 Kan. 312, Syl. ¶ 5, 940 P.2d 42 (1997).

Thus, there was substantial evidence supporting the district court's finding that E.P. was a resident of Missouri on the date the consents were signed.

### Remedy under the ICPC

The district court allowed E.P. to revoke her consent and dismissed the adoption petition based on the parties' noncompliance with the ICPC. Appellants contend that if the ICPC applied, the district court imposed an improper remedy.

The ICPC does not define the penalties that should apply when a person, rather than an agency, fails to comply with the ICPC's notice requirements. K.S.A. 38-1202, art. IV. The issue of the proper remedy for failure to comply with the ICPC is an issue of first impression in Kansas. For guidance on how to handle this issue, it is helpful to review how other states have handled such an issue and their rationale.

In *T.M.M.*, 186 Mont. 460, the natural mother, a resident of Mississippi, executed a parent's consent relinquishing her rights in her child and allowing for adoption by the prospective adoptive parents, residents of Montana. The prospective adoptive parents picked up the child in Mississippi and, after a brief stay, returned to Montana. The prospective adoptive parents then filed a petition for adoption in Montana. The district court in Montana entered an order terminating the natural mother's rights.

The natural mother filed an action in Montana to withdraw her consent. The district court dismissed her challenge for lack of standing. The natural mother appealed, contending that the prospective adoptive parents did not follow the provisions of the ICPC.

The Montana Supreme Court found that pursuant to the ICPC, the prospective adoptive parents were required to furnish SRS with written notice of their intention to bring the child to Montana. The court stated: "By virtue of the failure of the prospective adoptive parents to comply with the Compact, the placement of the child with the prospective adoptive parents in Montana constituted an illegal placement under the provisions of the Compact." 186 Mont. at 466. It went on to find that the "parent's consent" was the "legal authorization" held by the prospective adoptive parents and, therefore, their failure to comply with the terms and provisions of the Compact constituted sufficient grounds for revocation of the "parent's consent."

In *In re Adoption/Guardianship No. 3598*, 109 Md. App. 475, 499, 675 A.2d 170, *cert. granted* 342 Md. 582 (1996), the court was faced with the issue of how to remedy a situation in which the adoptive parents removed a child from the state in violation of the ICPC and held the child for a sufficient period of time that the best interests of the child appeared to dictate adoption, but a natural parent had contested the adoption. It held:

"Allowing violations to continue under the best interests of the child exception is problematic; the exception swallows up the rule. Every time there is a violation of the ICPC, the adoptive parents will have bonded with the child, making adoption the most attractive course. Permitting the adoption will send a message to other adoptive parents that it is not only permissible but advantageous to violate the ICPC, thus eroding the credibility of the ICPC. Eventually, all that will remain

of the ICPC is a gutted shell. Ironically, a Compact created and adopted to protect the best interests of the child will be trivialized into non-existence. In this case, unlike other cases that have ignored the violations of the ICPC for the sake of the child's best interests, there is a willing and able natural father who wants custody of the child. We cannot conclude that such placement is contrary to the child's best interests. In cases in which a child can be returned to a natural parent, a circuit court should enforce the spirit of the [ICPC]." 109 Md. App. at 510.

In *Matter of Jon K.*, 141 Misc. 2d 949, 950, 535 N.Y.S.2d 660 (1988), petitioners sought to adopt an infant who had been brought into New York in violation of the ICPC. The court held that the best interests of the child test did not preclude dismissing a petition for adoption where the ICPC was violated.

Other courts have used a best interests of the child test to nullify the failure to comply with the ICPC and allowed the child to remain with the adoptive parent. In *Mtr of Baby E.*, 104 Misc. 2d 185, 189, 427 N.Y.S.2d 705 (1980), the question before the court was what remedy was appropriate where an adoption petition was filed, but the ICPC had not been complied with. The court held that regardless of the violation of the ICPC, the adoption would be granted because it was in the child's best interests. See also *Matter of Calynn M.G.*, 137 Misc. 2d 1005, 523 N.Y.S.2d 729 (1987) (court held pursuant to the best interests of child test, child permitted to remain with adoptive parents notwithstanding failure to comply with ICPC); *State of Fla., DHRS v. Thornton*, 183 W. Va. 513, 396 S.E.2d 475 (1990) (best interests of child test used where ICPC violated by either the sending or receiving state). In these cases, it is important to note that a natural parent was not objecting to the adoption. Thus, the present case can be distinguished.

In *In re C.M.A.*, 557 N.W.2d 353, 358 (Minn. App. 1996), *rev. denied* April 15, 1997, the court held that a violation of the ICPC did not warrant vacation of the adoption decree where the violation was not knowingly done.

In *In re Baby Girl _____*, 850 S.W.2d 64 (Mo. 1993), the natural mother signed a consent to adoption shortly after the birth of the child. The child was then taken from Missouri to Arkansas, and the adoptive parents filed a petition for adoption in Arkansas. The nat-

ural mother then sought to revoke her consent. Although the court spoke favorably of the holding in *T.M.M.*, it went on to hold:

"[T]he statute provides that 'any such violation shall constitute full and sufficient grounds for the suspension or revocation of any license, or permit, or other legal authorization held by the sending agency which empowers or allows it to place, or care for children.' We believe this language allows the trial court discretion to enter an order as to the continuing validity of a consent and the custody of the child that it finds just in light of the facts and circumstances of the case before it. Again, at the pinnacle of the court's decision must be the child's best interests, not the interests of the other parties or even 'public policy.' These matters must be determined on a case-by-case basis. Revocation of consent based merely on Compact noncompliance could produce a potentially harsh result that may be contrary to the child's best interests." 850 S.W.2d at 71.

In *In re Adoption of C.L.W.*, 467 So. 2d 1106, 1111 (Fla. Dist. App. 1985), where the natural mother sought to revoke her consent based on the adoptive parents' noncompliance with the ICPC, the court held:

"[T]he compact is not available to nullify the adoption proceedings below because no harm was suffered by the failure to comply with its requirement of notification to [Health and Rehabilitative Services]. That agency is not complaining and has now made the same determination concerning the best interests of the child as it would have been required to make if notified under the compact. Further, appellant, as well as appellees, had a duty as a 'sending agency' under the compact to notify HRS and she should not now be allowed to complain of such failure by the [adoptive parents] to do so. The requirement for notification is only in order that the receiving state . . . can notify the 'sending agency' (either appellant or appellee) that the proposed placement with appellees would not be contrary to the best interests of the child."

In the present case, the district court expressly found E.P. to be a "sending agency," but it went on to find that both parties violated the ICPC's provisions. Appellants argue that because E.P. was the "sending agency" and because she violated the ICPC, the district court wrongfully rewarded her by allowing her to withdraw her consent.

E.P. counters by arguing that appellants should also be considered a "sending agency" because they "brought or caused the children to be brought into the state for purposes of adoption." She argues that appellants also had a duty to comply with the ICPC

but failed to do so. In their brief, appellants claimed they "did not knowingly or intentionally violate the provisions of the ICPC."

" 'Sending agency' means a party state, officer or employee thereof; a subdivision of a party state, or officer or employee thereof; a court of a party state, *a person*, corporation, association, charitable agency or other entity which sends, brings, or causes to be sent or brought any child to another party state." (Emphasis added.) K.S.A. 38-1202, art. II(b).

Appellant C.P. knew that on January 17, 1997, when he and E.P. went to meet with his attorney, E.P. was a Missouri resident. C.P. testified that the parties discussed what steps would need to be taken in order for E.P. to establish residency in Kansas because the Kansas adoption procedure was less complicated, and they could avoid the requirements of the ICPC by doing so. C.P. claimed that they discussed that E.P. could move into a trailer he owned in Kansas in order to establish her residency in Kansas. Appellants were aware of the ICPC, and it appears that they were trying to avoid its application by having E.P. become a Kansas resident prior to the adoption.

Appellants erred in believing that the ICPC would not go into effect until an adoption petition was filed on the theory that the consents were conditional until that date. To allow appellants to claim that they had no duty to comply with the ICPC, when they knew of its existence at the time they were holding the twins preliminary to a prospective adoption, would go against the purpose of the ICPC. Their mistaken belief as to its application date is no excuse when they knew that it would apply in an interstate adoption. Based on the unique fact situation, appellants also violated the ICPC.

Appellants urge us to adopt a best interests of the child exception to counter any noncompliance with the ICPC. We decline to do so. As the Maryland Court of Appeals stated:

"[I]t needs to be asked whether it is really good to make 'an exception' of each case on the plea of the 'best interests of the child.' It would not take many dismissals of adoption petitions and removal of children from homes in violation of placement laws to stop these efforts at evasion. They continue because failure to enforce the law encourages others to do likewise." *In re Adoption/Guardianship No. 3598*, 109 Md. App. at 506 (quoting American Public Welfare Association,

*The Interstate Compact on the Placement of Children: Compact Administrator's Manual*, 3.157-3.158 [1993]).

Such rationale is persuasive and should be followed by this court. Strict compliance with the ICPC should be enforced. Furthermore, Kansas recognizes a parental preference in custody disputes between a parent not found to be unfit and a third-party nonparent. *In re Guardianship of Williams*, 254 Kan. 814, 826, 869 P.2d 661 (1994).

Therefore, based on the specific factual situation in this case, the district court did not err in revoking the consent of E.P. based on a violation of the ICPC.

### Child in need of care case

The appellants ask us to consider the effect of a child in need of care case, 97 JC 183, concerning the children. Appellants do not provide any citations to the record to support their claim that the order of placement defeats the goal of the ICPC. The claim seems to be that the revoking of the consent gave the Kansas court jurisdiction over the children which it would otherwise not have. We generally decline to consider this claim as the appellants do not provide any citations to the record to support it. See Kansas Supreme Court Rule 6.02(d) (1996 Kan. Ct. R. Annot. 30). In any event, it appears the district court's order in the child in need of care case was based on a situation existing between the appellants and E.P. at the time of the dismissal of the adoption and would not require a reversal of the dismissal order in any event.

Affirmed.