**In the Matter of Baby Girl SMITH, a Minor.**

No. 30594.

St. Louis Court of Appeals.

Missouri.

Oct. 18, 1960.

Jerome M. Steiner, Clayton, for appellants.

John R. Barsanti, Jr., Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, guardian ad litem, and pro se, for respondent.

WOLFE, Presiding Judge.

This is an appeal from the Juvenile Division of the Circuit Court of St. Louis County in an adoption proceeding. The action was brought by a husband and wife for the purpose of adopting a baby girl. This case was before us once before in an abortive appeal from an order denying custody of the child to the petitioners for adoption. That order provided that custody be transferred to the State Department of Public Health and Welfare, Division of

Welfare, Child Welfare Services. Inasmuch as the order at that time did not dispose of the petition for adoption, we held that there had not been a final appealable judgment. In re Smith, Mo.App., 331 S.W. 2d 169. We dismissed the appeal and remanded the matter for final determination. Thereafter the trial court entered an order dismissing the petition for adoption, and the petitioners have again appealed.

Upon the filing of the petition the court appointed a guardian ad litem, who at all times throughout the trial represented the child in question.

The evidence revealed that the natural mother of the baby girl was unmarried. When she became pregnant with the child, she consulted a physician about her condition and told him that she did not want the baby. The physician told her that he had a patient who would like to adopt the child. He had in mind the petitioner and her husband, who are the appellants here. The doctor consulted a lawyer and had the natural mother execute a "petition and application of natural mother for transfer of custody of minor child and permission to waive the necessity of consent to future adoption of said child". This was filed with the appellants' petition for adoption. The petitioners never had any contact with the natural mother, and the baby was given to them by the doctor or at his direction by the hospital where it was born.

The husband petitioner for adoption was 35 years of age. He was employed as a warehouse stock clerk by a shoe company. The man under whom he worked testified that he had been a faithful employee. This witness also stated that the petitioner had been dishonorably discharged from the United States Army. During his military service the petitioner had been assigned to assist the driver of a half-track truck to render first aid and bring back wounded. After four days under fire he refused to obey orders to go forward again. He was court-martialed and sentenced to death. The sentence was commuted to life, and later he was dishonorably discharged. The witness stated that he had tried to obtain a review of the court martial on behalf of the petitioner in order to have the dishonorable discharge set aside, but that he had been unable to obtain a review. He also testified that the Army record showed that the petitioner had an I. Q. of 55.

The husband petitioner testified about his home and finances, which appeared to be modest but adequate. He had very limited ability to read and write, which was evidenced by his efforts to do so at the request of the guardian ad litem.

The wife of the petitioner testified that she had a high school education and had worked as a stenographer up to three years prior to the hearing. She stated that the child fitted well into their home and was happy and healthy.

The petitioners were investigated by a welfare worker for the St. Louis County Child Welfare Services. She testified that the child had received good care in the petitioners' home. She also stated that the Army records of the husband showed that because of his inability to read he could be given no achievement tests, and that he was in need of psychiatric treatment. It was her recommendation that the child be taken from the home of the petitioners because "the fullest development will not be served in a home of such limited capacity". The court denied the application for transfer and ordered the child turned over to Child Welfare Services, as stated. The lawyer representing the petitioners at the trial withdrew, and counsel prosecuting this appeal entered his appearance for them.

The first three of appellants' points may be briefly disposed of because they are predicated upon what the appellants consider a violation of certain sections of Chapter 211, RSMo 1949, V.A.M.S. That chapter deals with children who are neglected or charged with crime. No such matter was before the court. Chapter 453, RSMo 1949, V.A.M.S., deals with adoptions, and that is the statute under which the proceedings here

considered fall. Hyman v. Stanley, Mo. App., 257 S.W.2d 388.

It is also contended that the court ignored the natural mother's "right to place the child where she pleased". The appellants then proceed upon that premise to assert that the court was without authority to inquire into the method of the child's placement with the petitioners.

The statute regarding the transfer of the custody of children is § 453.110, RSMo 1949, V.A.M.S. The first subsection provides that no person shall surrender the custody of a minor child to another without first seeking approval of the transfer in the Juvenile Court. The second subsection provides that the first section "shall not be construed to prohibit the placing of a child in a family home for care by any parent, agency, or organization or institution, if the right to supervise the care of the child and to resume custody thereof is retained. If any such surrender or transfer is made without first obtaining such an order, such court shall have the right on petition of any public official or interested person, agency, organization, or institution, to inquire into the facts and to make such order as to the custody of such child as may be for the best interests thereof."

▮▮▮ The obvious purpose of the statute was to put an end to the indiscriminate transfer of children; the concept that a parent could pass them on like chattels to a new owner. This was attempted here, and the transfer made was illegal from its inception. The mother simply wanted to get rid of the child, and this was in no sense a transfer under the statute by leave of court or by the parent retaining the right to supervise the care of the child and to resume its custody as provided in Section 453.110 quoted above. State· ex rel. Dorsey v. Kelly, Mo.Sup., 327 S.W.2d 160, loc. cit. 165. The court properly heard evidence regarding the transfer.

▮ Some objection is made about the court receiving and reading a report made by the State welfare worker, as provided by Section 453.070 RSMo 1949, V.A.M.S. Complaint about the report is made here for the first time, and the report is not in the transcript before us. The State welfare worker who made the report testified, and both of the petitioners testified. Regardless of what the report contained the evidence heard clearly supported the decree of the court.

We therefore hold that the Juvenile Court, in entering its decree transferring custody of the child to the Child Welfare Services of the State, and denying the adoption, was acting within its sound discretion. Its judgment is affirmed.

ANDERSON and RUDDY, JJ., concur.