In the Matter of the ADOPTION OF J. M. K., Infant.

A. and A. C., Appellants,

v.

M. F., Respondent.

No. 23339.

Kansas City Court of Appeals. Missouri.

June 5, 1961.

As Modified on Court's Own Motion

Aug. 22, 1961.

Rufus Burrus, Independence, for appellant.

Arthur T. Stephenson (Foust & Lyons), Kansas City, for respondent.

SPERRY, Commissioner.

J. M. K. is the son of defendant M. F., formerly M. N.

This action was instituted by A. and A. C., husband and wife, seeking an order transferring legal custody to them of J. M. K. with the avowal that, nine months after having received such custody, they will seek his legal adoption. From an order dismissing their petition at the close of their evidence, plaintiffs appeal.

The evidentiary facts are to the effect that plaintiffs are childless after 13 years of marriage, and will so remain; that they had long wanted to adopt a child but had been unsuccessful in their efforts to do so; that, prior to June, 1958, they had lived in Jackson County, where Mrs. C. knew a Mrs. Closser, an aunt of defendant; that defendant was then M. N. and was single; that Mrs. C. met her, knew that she was unmarried, and saw the child; that, in Sept. 1958, she had a telephone call from Mrs. Closser who asked if she would like to have J. M. K. Mrs. C. stated on the stand that she wanted a child but only if plaintiffs could adopt him; that defendant telephoned her, in September, and asked if plaintiffs would take J. M. K.; that she told defendant that plaintiffs would take him only if they could adopt him; that they met near the home of defendant's mother, on the street, drove around and talked; that they told defendant they would only take J. M. K. for adoption; that defendant stated that her health was not good, that she could not provide for the child as she should, that he was extremely nervous from being left at numerous nurseries; that he had recently been staying with defendant's mother, who wanted defendant and him out of the apartment, which was small. On Friday night next, she called defendant and defendant told her that she had decided to let plaintiffs have J. M. K., that he had been told and was happy. He talked to Mrs. C. on the telephone. She further stated that, the next morning, Sept. 27, 1958, plaintiffs went to defendant's home and got J. M. K. and all of his clothing and toys and took him to their home in Clay County, where he

has since resided; that they did not thereafter talk to defendant about him except when plaintiffs called to ask her about his shots etc.; that several such telephone calls were made by plaintiffs, the last one being in early Nov. 1958; that defendant never telephoned to inquire about him thereafter, nor ever came to see him until Jan. 5, 1960; that, from Sept. 25, 1958, until the date of trial, defendant had never contributed or offered to contribute anything to his support, or sent him any present of any kind. Plaintiffs had applied for and procured a birth certificate for him.

Mrs. C. stated that she called defendant in Jan. 1960, to talk to her about adoption; that defendant came to her home to see J. M. K.; that she was told that the child believed plaintiffs to be his parents and was asked not to tell him different; that, when plaintiffs first took him, they told defendant they wanted to see how he adjusted to them before proceeding further. Mrs. C. stated that the adjustment proved to be perfect; that, at the Jan. 1960 visit, they asked defendant to sign papers for adoption and she refused.

Mrs. C. stated that nothing further occurred between plaintiffs and defendant until May, 1960, when defendant came to plaintiffs' home and said that she had come for J. M. K.; that her husband told her "no" and shut the door.

It also appears that plaintiffs own and are making payments on a comfortable 5 room house; that they own another house, which is clear and which rents for $80 monthly, a 1956 BelAir Chev., clear, savings of about $2,000, and life insurance on Mr. C., who has a responsible position with General Motors, earning between $4,000 and $5,000 annually; that J. M. K. has been medically well cared for and well and religiously trained. The record also shows that the Guardian Ad Litem report-

ed plaintiffs as suitable persons to adopt a child.

Mrs. C. stated that, at the time she took J. M. K., she talked to an investigator for the welfare office in Clay County and was advised not to take him; that she asked defendant not to come to her home and upset him until he had settled down and become adjusted but did not tell her that she could not see him at all; that she told defendant she would not be expected to pay for his support because she thought they were taking him for adoption; that defendant never offered to pay support money.

At the conclusion of plaintiffs' evidence defendant filed a motion to dismiss the petition. The motion, in two paragraphs, is to the following effect:

(1) Petitioner's evidence shows that custody was obtained contrary to the provisions of section 453.110 R.S.Mo. 1949, and such section prohibits the court from vesting custody in them;

(2) Petitioner's evidence shows they have violated the above statute and the court should not further encourage the unlawful act contrary to the equitable principles of clean hands.

The court sustained the motion and announced that he sustained it on the grounds stated in the motion, "Not upon any other grounds at all."

The statute relied on by defendant is as follows:

"453.110. Prohibiting transfer of custody of child—exception—penalty. —1. No person, agency, organization or institution shall surrender custody of a minor child, or transfer the custody of such a child to another, and no person, agency, organization or institution shall take possession or charge of a minor child so transferred, without first having filed a petition before the circuit court sitting as a juvenile court of the county where the child may be, praying that such surrender or transfer may be made, and having obtained such an order from such court approving or ordering transfer of custody.

"2. This section shall not be construed to prohibit the placing of a child in a family home for care by any parent, agency, or organization or institution, if the right to supervise the care of the child and to resume custody thereof is retained. If any such surrender or transfer is made without first obtaining such an order, such court shall have the right on petition of any public official or interested person, agency, organization, or institution, to inquire into the facts and to make such order as to the custody of such child as may be for the best interests thereof.

"3. Any person violating the terms of this section shall be guilty of a misdemeanor."

The undisputed evidence shows a violation of the terms of subsection 1 of the statute. Since no contradictory or explanatory evidence was heard we must conclude that both parties to this action violated the letter and the spirit of the statute.

The second clause of subsection 2 prescribes procedure to be followed in such a situation: such court (juvenile court) shall have the right on petition of any public official *or interested person* to inquire into the facts and to make such orders *as to the custody of such child* as may be for the best interests thereof.

The person who has actual custody of a child under such conditions is an interested person within the meaning of the statute. Upon the filing of this petition the court acquired full and complete jurisdiction, by the very terms of the statute itself, to inquire into the facts *and* to make such orders as to the custody of the child *as may be for the child's best interests*; not the best interests of the parent

or of the proposed adoptive parent. This the court did not do. Instead, the petition was dismissed, on a motion, at the close of plaintiffs' evidence. No evidence was heard touching custody of the child from the standpoint of his best interests. He has rights which, in this case, should have been adjudicated under the provisions of the statute, but were not.

 Because of the error in dismissing the proceedings without a full inquiry into the question of custody, from the standpoint of the child's best interests, and a complete failure to adjudicate this paramount issue, the judgment is reversed and the cause is remanded.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court.

All concur.