OPINION OF THE COURT
C. Raymond Radican, J.
The infant in this private placement adoption was born on December 19, 1985 in Knoxville, Tennessee. The attorney for the adoptive parents has filed an affidavit in which he states that the natural mother was referred to him by clients of his and prior to the birth of the child she contacted his office indicating her desire to place her child for adoption. The attorney advised the natural mother that the petitioners were seeking to adopt a child. The natural mother and the petitioners contacted one another and after an exchange of background information, the natural mother agreed to place the infant with the petitioners.
The natural mother engaged independent counsel in Tennessee, who supervised the natural mother’s execution of a surrender agreement and testimony before the Chancery Court in Tennessee. The adoptive parents also appeared before the Tennessee court, executed an agreement of adoption, and gave testimony which resulted in an order dated December 23, 1985, permitting the adoptive parents to remove the child to their residence in the State of New York for the purpose of commencing an adoption. The adoptive parents subsequently removed the child from the hospital and returned to New York. The usual documents were filed with the Interstate Compact Administrators for the State of Tennessee and New York (ICPC 100A, 100B).
The problems with this adoption began when the Interstate Compact Administrator of the State of Tennessee concluded that the placement of the child was in violation of the then existing Tennessee law prohibiting third-party placements. Since the time of the filing, the law in Tennessee has changed permitting unlicensed intermediaries to assist in the placement of children (Tenn Code Annot § 36-1-134, eff July 1, 1986). Nevertheless, a service fee, other than medical or legal expenses or reasonable living expenses, is prohibited under Tennessee law (Tenn Code Annot § 36-1-135). As a result of the determination made by the Office of the Tennessee Compact Administrator, the New York State Compact Administra *254 tor has refused to give his approval to the proposed adoption. In order to resolve the resulting stalemate, the court directed the attorney for the adoptive parents to serve a citation on the Compact Administrator for the State of New York and the Social Services Division of the Tennessee Department of Human Services to show cause why the adoption of the infant should not be granted upon the sole consent of the natural mother and why the infant’s name should not be changed to that of the adoptive parents. In answer to the citation served upon the New York Compact Administrator, the court has received a rather lengthy letter from the Department of Social Services, explaining the position of the Department and the Office of the Compact Administrator on private placement adoptions in general and this proposed adoption in particular. The Department argues that the Interstate Compact on the Placement of Children (Social Services Law § 374-a) applies to all private placement adoptions, and cites article III of the compact, which provides that: "(a) No sending agency shall send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein.” Subdivision (d) of article III further provides that the child shall not be sent or brought into the receiving State until the appropriate authorities in the receiving State notify the sending agency (which can be an individual person, art II, definitions) that the proposed placement does not appear to be contrary to the interests of the child. The Department concludes that by bringing the child into the State of New York, the persons involved may have been in violation of sections 374 and 382 of the Social Services Law which prohibit any person or entity except an authorized agency from placing children for adoption.
Whether or not to even permit private placement adoptions is a matter of an individual State’s public policy. Connecticut, for instance, prohibited private placement ¿¿options for a while, but has recently enacted legislation to once again permit private adoptions. The State of New York finds that private placement adoptions serve a valuable purpose and fulfill an obvious need of its citizens. In 1986, this court alone processed 244 private placement adoptions and only 120 agency adoptions.
*255 As far as the application of the Interstate Compact to this case, the court has reviewed the limitations set forth in article VIII of the compact:
"This compact shall not apply to:
"(a) The sending or bringing of a child into a receiving state by his parent, step-parent, grandparent, adult brother or sister, adult uncle or aunt, or his guardian and leaving the child with any such relative or non-agency guardian in the receiving state.”
While it is clear from the statute that a parent may send or bring his or her child into another State without violating the compact, it is equally clear that the child may only be left with a close family relative or a nonagency guardian in the receiving State.
Who qualifies as a "non-agency guardian” is uncertain since such a person is not defined in article II of the act. However, according to the decision in Matter of Baby E. (104 Misc 2d 185), regulation III adopted by the Association of Administrators of the Interstate Compact on April 19, 1978 states: "Article VIII (a) of this Compact applies only to the sending or bringing of a child into a receiving state to a parent or other specified individual by a parent or other specified individual whose full legal right to plan for the child has been established by law at a time prior to initiation of the placement arrangement, and has not been voluntarily terminated, or diminished or severed by the action or order of any Court. ” (Emphasis added.)
Based on the interpretation made by the Association of Administrators of the Interstate Compact, the court in Matter of Baby E. (supra) determined that a nonagency guardian who receives the child must meet the same standards as the one who places the child, and only one whose legal relationship has been independently and legitimately established has the right to effect such a drastic change as an interstate placement without the oversight and supervision of the contracting States.
In the Baby E. case (supra), the natural mother executed an out-of-court consent in California without an appearance before a Judge of that State and the child was removed from California to New York where an adoption proceeding was instituted. The natural mother later appeared in New York, where she gave her consent before the court, with the assistance of assigned counsel. The court concluded that the com *256 pact applied since the recipients of the child were strangers and not close relatives of the child.
Unlike the individuals involved in the Baby E. case (supra), the parties and the attorneys before this court attempted to comply with the provisions of the compact (art III) by filing the appropriate documents with the sending and receiving States. The court in Matter of Baby E. was concerned with the attorney’s involvement in the placement of the child and his possible violation of sections 374 (2) and 382 (2) of the Social Services Law. The attorney traveled to California with, the adoptive mother, obtained the natural mother’s out-of-court consent, and obtained the release of the baby from the hospital. In the case at bar, there is no such intimate involvement by the adoptive parents’ attorney. The natural mother was represented by independent counsel in Tennessee, her consent was given before an appropriate court in Tennessee and the release of the baby from the hospital was effected by the mother and adoptive parents themselves. There is no evidence in the record to show that the attorney for the adoptive parents has violated the adoption statutes (Social Services Law §§ 374, 382) by his actions. It is the court’s opinion that an attorney does not violate the adoption statutes when he merely counsels clients on how to legitimately locate an adoptable child and advises them of the legal hurdles involved in private adoption matters while not entering the gray area where he may be assuming the role of an authorized agency in violation of Social Services Law §§ 374 and 382 (which, parenthetically, this court respectfully requests the Legislature to review in order to give guidelines to adoption practitioners so the State’s policy can be clearly defined as to what practices by private placement attorneys may or may not be sanctioned).
As far as the adoptive parents are concerned, they are not close relatives and further guidelines are needed in the act for them to qualify as "non-agency guardians”. Nevertheless, a review of what has transpired shows that their rights to plan for the child were fixed by law when the Tennessee Chancery Court issued an order giving them custody and permission to remove the child from that State for the purpose of initiating an adoption proceeding under the laws of this State. That authority has not been revoked by an action or court order and the petitioners have fully complied with the Tennessee order by filing their application for adoption. There have been two home studies conducted, including one by the court’s own *257 confidential investigator, and an information request filed with the New York Child Abuse Maltreatment Register.
As noted in the Baby E. (supra) case (citing Secretariat Opn No. 16 [May 16, 1975]) it often happens that children are placed from one compact State into another without observing compact procedures. While efforts should be made to prevent this, " 'the most desirable course to follow is often dependent upon reasonable judgment as to the equities.’ ” (104 Misc 2d, supra, at 193.)
Except for failing to get the approval of the Interstate Compact Administrator, in all other respects the petitioners have complied with New York law. The natural parents have given their irrevocable consents before a court of competent jurisdiction in Tennessee and the petitioners have shown themselves to be concerned, loving people.
Based upon the record presently before it, the court finds it is at this juncture to make its determination based on the best interest of its ward, and that the best interests of the child will be served by permitting him to remain with the adoptive parents in Nassau County and grants the application for adoption.
Although no unauthorized involvement was found in this case, where a third-party intermediary is involved, particular concern is warranted on the part of the court. Accordingly, the court deems it appropriate to admonish any physicians, lawyers, or other individuals who act in an unauthorized manner as intermediaries that they may be subject to criminal liability (Matter of Anonymous [G.], 89 Misc 2d 514; Matter of Aronson, 18 AD2d 53; People v Michelman, 93 Misc 2d 297). In order to safeguard against the improper activities of intermediaries and to set some guidelines until the Legislature has had an opportunity to fully review this matter and possibly prescribe legislative guidelines for adoption practitioners, this court instituted the following additional rules for private placement adoptions:
a) the natural mother must be afforded independent counsel from a court-approved panel of attorneys familiar with adoption proceedings if she does not have an attorney of her own;
b) the attorney for the adoptive parents must not be involved, either directly or indirectly, in the placement of the child (while the court has already determined that there is no violation of this rule in this case, the matter will be submitted to the Surrogates’ Association for further review);
*258 c) the use of independent search agencies involved in the procurement or placement of children are prohibited;
d) prior approval of expenditures involved in the pregnancy and birth of the child must be obtained from the court;
e) consents by the natural parent or parents to the proposed adoption must be made before the court or a court of similar jurisdiction in the State where the infant or parents reside.
These rules reflect further and continuing efforts by the court to protect the best interests of children which come before it.
These temporary rules have been approved by the New York State Surrogates’ Association.