In re BABY GIRL _____.

PEGGY _____, Appellants,

v.

MICHAEL _____ and Becky
_____, Respondents.

No. 75081.

Supreme Court of Missouri,
En Banc.

March 23, 1993.

John Hall Dalton, Jr., Kennett, Guardian ad Litem.

PRICE, Judge.

This matter involves an attempt by Respondents Michael and Becky to adopt a baby girl born July 23, 1990, at 1:24 p.m. at Twin Rivers Regional Medical Center (Medical Center) in Kennett, Missouri. Appellant Peggy, the natural mother, sought to withdraw or invalidate her consent to the adoption and regain custody of the child. She filed her petition in the Circuit Court of Dunklin County, Missouri, the county where the child was born, where physical (not legal) custody of the child was transferred, and where Peggy resides with Dennis, the putative father of the child. The circuit court denied Peggy's request solely upon its determination that she validly consented to the transfer of custody of the child to Michael and Becky.

Peggy then appealed to the Court of Appeals, Southern District, which held that Missouri courts lack jurisdiction to order transfer of custody or to set aside consent to an adoption where the child is not in the custody of the mother and is not physically present in Missouri. We disagree.

The facts and circumstances of this case are unusual. There is nothing in the record to indicate that any of the parties involved had anything but the best intentions in mind for the child. Nonetheless, their actions failed to comply with the laws enacted by Missouri's legislature concerning the transfer of custody of children born in this state, specifically § 453.110, RSMo Supp.1992.[1] In such situations, the statute vests jurisdiction in the county where the improper transfer of custody occurred. The statute requires that an investigation and report be made and that the court enter a custody order based upon the child's best interests. Accordingly, we remand this matter to the Circuit Court of Dunklin County for such an investigation

Jim R. Bruce, Kennett, Thomas J. Downey, Jefferson City, for appellants.

John T. McMullan, Kennett, for respondents.

---

1. With the exception of § 453.110, RSMo Supp. 1992, all statutory references are to RSMo 1986, unless otherwise indicated.

to be made and an appropriate order entered.[2]

## I.

Peggy was 38 years old when she gave birth to a baby girl. Because of her age, she was concerned about an increased risk of the baby being born mentally retarded or with Down's Syndrome. Her anxiety was heightened by the fact that Dennis had a nephew with Down's Syndrome. After complications during her pregnancy, Peggy's physician believed that the child might be stillborn.

On the day of the birth, Peggy expressed her worries to the nurse monitoring her contractions in the labor room. Peggy explained that she did not think she could handle a baby under those circumstances. Despite Peggy's apprehension, she gave birth to a healthy baby girl at 1:24 p.m. on July 23, 1990.

At approximately 5:00 p.m., July 23, 1990, Geraldine Looney, Director of Nursing at Twin Rivers, placed a long-distance telephone call to Michael at his home in Pocahontas, Arkansas, to tell him about the baby. Michael worked as a nursing supervisor at the Medical Center. It was generally known at the Medical Center that Michael and his wife, Becky, wanted to adopt a baby girl the next time one was available.

Michael then called Joanne Burton, the social worker assigned to the hospital, to see if she had additional information about the child. She told him that they had not been able to get a commitment from the mother. Michael asked Burton to speak to the mother on his behalf about arranging a private adoption.

Michael and Becky called their Arkansas attorney that evening about arranging an adoption. The next morning, Michael picked up a consent form from his attorney and took it to the Medical Center for Peggy to sign.

Michael arrived at the Medical Center with the consent form at 10:30 a.m. on July 24, 1990. He met with Burton and asked that she obtain Peggy's consent and signature. Approximately 20 to 30 minutes later, Burton returned with the consent form signed and notarized. Burton and Looney then agreed they would have the child discharged to Michael and Becky later that afternoon. The child was turned over to them at 5:15 p.m. by a nursery nurse. Michael and Becky then returned home to Arkansas. A petition for transfer of custody was never filed prior to the actual physical transfer of custody. The following day, July 25, 1990, Michael and Becky filed a petition for adoption in the Probate Court of Randolph County, Arkansas.

On July 26, 1990, Peggy contacted an attorney at Southeast Missouri Legal Aid with whom she met on August 1, 1990. She wanted the return of her child. Her attorney telephoned Michael and Becky's attorney requesting that the child be returned. On August 2, 1990, Peggy learned that the couple was unwilling to return the child. An objection to adoption was filed on August 7, 1990, in the Arkansas court to revoke Peggy's consent. It was also alleged that the Arkansas court lacked jurisdiction.

The Arkansas proceedings were stayed until Michael and Becky "comply with Missouri law pertaining to the adoption and transfer of custody of the minor child." The court also ordered the couple to "immediately file an action in Missouri to comply with the Missouri laws and do this without unnecessary delay." The couple, however, did not file an action in Missouri.

Peggy filed her petition in the Circuit Court of Dunklin County specifically requesting that her consent be revoked or invalidated *and* that custody of the child be returned to her. After a hearing, the circuit court entered a thorough seven page written decision stating its findings of fact and law and denied Peggy's request for relief. The following findings are of particular significance:

5. Further, the Court finds that neither the fact that Petitioner's written consent was executed, or that physical custody was transferred, during the for-

**2.** We have jurisdiction pursuant to Article V, § 10, of the Missouri Constitution.

ty-eight hour period following the birth of the child leads to the conclusion that the consent is void or is required to be set aside. R.S.Mo. 453.030 clearly provides that "consent may be executed at anytime subsequent to the birth of a child ..."

6. The Court finds and concludes that in this proceeding the burden is upon Petitioner to establish good cause for the withdrawal of consent to adoption and that Petitioner fails to sustain her burden of proof. The Court finds that Petitioner was legally capable of giving her consent to adoption herein during all relevant times and that she did so knowingly and voluntarily and not by reason of any direct or indirect fraud or duress and that she now merely has attempted to change her mind.

7. Further, the Court finds that neither the rights or the status of Dennis [ ] are at issue in this proceeding.[3]

8. Further, the Court finds that transfer of custody is not at issue in this proceeding and it has no authority to here make an award of custody, or order of transfer of custody.

9. Further, the Court finds that in this proceeding it does not, and has not attempted to, determine the ultimate fitness of the parties or the best interest of the child.

Peggy appealed to the Court of Appeals, Southern District. It reversed and remanded to the trial court with instructions that the petition be dismissed for lack of jurisdiction. Michael and Becky continue to have physical custody of the child.

This case presents us with three basic questions. First, does the Circuit Court of Dunklin County have jurisdiction to consider the issue of custody of a child born in Dunklin County but thereafter removed from the State in violation of § 453.110? Second, what is the extent of that jurisdiction regarding issues that should be addressed? Third, what is the status of Peggy's initial consent?

## II.

### *Jurisdiction of the Circuit Court of Dunklin County*

Missouri has a significant interest in the welfare of all children born or residing in this state. One of the most important safeguards in protecting children's welfare is to have a mechanism in place to ensure their proper care and custody. Chapter 453, Adoption and Foster Care, governs Missouri's procedures for the care, custody and ultimate adoption of Missouri's children. At the outset, § 453.005 identifies the guiding principle that should always remain in focus by stating that the Act is to be construed "to promote the best interests and welfare of the child in recognition of the entitlement of the child to a permanent home."

Section 453.110.1 sets forth the method for transferring custody of a minor child.[4] It states, in relevant part:

**Prohibiting transfer of custody of child—exception—penalty—investigation and report.**—1. No person, agency, organization or institution shall surrender custody of a minor child, or transfer the custody of such a child to another, and no person, agency or organization or institution shall take possession or charge of a minor child so transferred, without first having filed a petition before the circuit court sitting as a juvenile court of the county where the child may be, praying that such surrender or transfer be made, and having obtained such an order from such court approving or ordering transfer of custody.

The only exception to the court order requirement afforded by the statute is where

---

3. We are unable to determine from the record whether Dennis, the putative father, received service of process. Service requirements may be waived only where the court finds that the putative father "has not acknowledged the child as his own by affirmatively asserting his paternity or whose identity is unknown." § 453.060.

Absent such findings, Dennis is a necessary party with significant rights of his own.

4. The statute was first enacted in 1917 and has been amended several times. Since its inception, it has required a court order before a transfer of custody may be made.

"the right to supervise the care of the child and to resume custody thereof is retained." § 453.110.2.

■ The obvious purpose of the legislature in enacting § 453.110.1 was to prohibit the indiscriminate transfer of children, the concept that a parent could pass them on like chattel to a new owner. *In the Matter of K.W.S.*, 370 S.W.2d 698, 702 (Mo.App. 1963); *In the Matter of Baby Girl Smith*, 339 S.W.2d 490, 492 (Mo.App.1960); *In re Adoption of Davis*, 285 S.W.2d 35, 37 (Mo. App.1955). In order to effect this purpose, the legislature enacted § 453.110.1 "whereby the custody of a child could not be transferred at the whim of an individual in charge of it, but, on the contrary, a transfer of custody of a child must have the sanction of a court given by order approving such transfer." *In re Adoption of Davis*, 285 S.W.2d at 37.

■ The court from which the order must issue is specifically designated in § 453.110.1. It states that the petition for transfer of custody must be filed in "the circuit court sitting as a juvenile court of the county where the child may be." § 453.110.1. In the case of *In re Adoption of Sypolt*, 361 Mo. 958, 237 S.W.2d 193, 195–196, (1951), this Court found the language "where the child may be" to be clear and unambiguous. It stated that "where the child may be" means where the child is a resident at the time. *Id.* at 196. Thus, jurisdiction is initially established when the child is born and may follow the child and legal custodian from county to county.

■ In the present case, the child was born in Dunklin County and her initial legal custodian was her natural mother. While the child was physically removed from this jurisdiction, no one sought or obtained judicial approval of the transfer of custody from the Circuit Court of Dunklin County. Nor has there been any showing or claim that the transfer of custody fell within the exception of § 453.110.2.

This is precisely the type of action that the legislature sought to avoid when it enacted § 453.110.1. *In the Matter of K.W.S.*, 370 S.W.2d at 702; *In the Matter of Baby Girl Smith*, 339 S.W.2d at 492; *In re Adoption of Davis*, 285 S.W.2d at 35. Because an appropriate order was not obtained, all acts thereafter regarding custody were void from any legal perspective. The transfer of custody of the child from Peggy to Michael and Becky was "illegal from its inception." *In re Baby Girl Smith*, 339 S.W.2d at 492.[5] Jurisdiction still remains in Dunklin County.

■ Where an illegal transfer of custody has taken place, jurisdiction is made clear in § 453.110.2. The statute provides:

If any such surrender or transfer is made without first obtaining such order, *such court* shall, on petition of any public official *or interested person,* agency, organization, or institution, *order an investigation and report* as described in section 453.070 to be completed by the division of family services *and shall make such order as to the custody of such child as may be for the best interest thereof.*

(Emphasis added). The reference in § 453.-110.2 to "such court" must refer to the court specified in § 453.110.1 as the "circuit court sitting as a juvenile court of the county where the child may be." Thus, "such court" is the court where an order originally should have been sought to have legal custody transferred, in this case, Dunklin County. The illegal removal of a child from the court's physical jurisdiction does not divest the court of its legal jurisdiction over the child.

■ Our holding is also mandated by Article V of the Interstate Compact on Child Placement (Compact).[6] Section 210.-620. The Compact, enacted by all fifty states, is part of a comprehensive legisla-

---

5. Not only was the transfer illegal for lack of a court order, but § 453.030.6 prohibits the court from transferring custody until the child is at least two days old. In this case, the child was transferred the day after her birth.

6. A few courts have suggested that the Compact applies only when a public or private *agency* is involved. *In re Adoption of MM*, 652 P.2d 974, 981 (Wyo.1982); *see also In re Adoption of Baby Boy W.*, 701 S.W.2d 534, 542 (Mo.App.1985). We find, however, that the Compact is applicable in this situation. The purpose and policy of

tive scheme to protect the welfare of children. Article V states, in relevant part:

The *sending agency* shall retain jurisdiction over the child sufficient to determine all matters in relation to the custody, supervision, care, treatment and disposition of the child which it would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting or is discharged with the concurrence of the appropriate authority in the receiving state. Such jurisdiction shall also include the power to effect or cause the return of the child or its transfer to another location and custody pursuant to law.

Under the Compact, even if the Circuit Court of Dunklin County had entered an order giving the Arkansas couple custody, it would have retained jurisdiction until an adoption or some further order as set out in the statute was decreed. No adoption decree or other such order has been entered by a court of this state or any other state. In fact, the Arkansas Court has expressly refused to take jurisdiction, at least at this time, and has specifically directed Michael and Becky to obtain an appropriate order from a Missouri court, which they did not do. Therefore, the Compact also provides the Circuit Court of Dunklin County jurisdiction over the child.[7]

### III.

### *The Extent of the Circuit Court's Jurisdiction*

■ Peggy pled not only for revocation of consent, but also for transfer of custody.

Although the court considered the validity of Peggy's consent, it failed to take appropriate action regarding the custody of the child as required by § 453.110.2. The plain terms of § 453.110.2 require that when a transfer of custody is made without first obtaining the appropriate order, the court *shall,* upon petition of any interested person, order an investigation and report and enter a custody order based on the child's best interests.

■ For purposes of this statute, Peggy qualifies as an interested person. Although the petition was cursory, it need only state facts that bring the child within the jurisdiction of that court. *In the Interest of D.L.D.,* 701 S.W.2d 152, 158 (Mo.App. 1985). The petition filed below in the Circuit Court of Dunklin County alleged the unlawful removal of the child from Dunklin County to Arkansas and "[t]hat it is in the best interest of the child that the consent be withdrawn, and Respondents ordered to immediately deliver the child to Petitioner." This was sufficient to invoke the jurisdiction of the Circuit Court of Dunklin County.

Once jurisdiction of the court was invoked, the court was required by statute to order an investigation and report and to enter a custody order. As was stated in *In re Adoption J.M.K.,* 347 S.W.2d 239, 241 (Mo.App.1961):

Upon the filing of this petition the court acquired full and complete jurisdiction, by the very terms of the statute itself, to

---

the Compact, articulated in Article I, are just as applicable to an adoption arranged privately between a consenting natural parent and the adopting parents as agency adoptions. *Further, the Compact's definition of the term "sending agency" includes a "person." A natural parent then falls within the definition.* The Compact's applicability to private adoptions is supported by its legislative history, other courts, and the Secretariat who coordinates the Compact at a national level and furnishes advisory opinions to Compact administrators. *See* Hartfield, *The Role of the Interstate Compact on the Placement of Children in Interstate Adoption,* 68 Neb.L.Rev. 292, 301, 314–15 (1989); *see also In re Adoption of C.L.W.,* 467 So.2d 1106 (Fla.Dist.Ct.App.1985); *In re Adoption No. 10087,* 324 Md. 394, 597 A.2d 456, 461–462 (1991); *In re Adoption of T.M.M.,*

186 Mont. 460, 608 P.2d 130, 132 (1980); *In the Matter of the Adoption of Baby Boy M.G.,* 135 Misc.2d 252, 515 N.Y.S.2d 198, 199–200 (Sur. 1987); *In the Matter of the Adoption of Calynn, M.G.,* 137 Misc.2d 1005, 523 N.Y.S.2d 729, 730–731 (Sur.1987); *In re Adoption of Baby "E",* 104 Misc.2d 185, 427 N.Y.S.2d 705, 708–709 (Fam.Ct. 1980); *see also American Public Welfare Association, The Interstate Compact on the Placement of Children: Compact Administrators' Manual 2.36* (Opinions of Interest) (1982).

7. The provisions of the Uniform Child Custody Jurisdiction Act contained in §§ 452.440–452.-550 do not require a different result, although we need not address the Act's applicability here.

inquire into the facts *and* to make such orders as to the custody of the child *as may be for the child's best interests;* not the best interests of the parent or of the proposed adoptive parent.

(Emphasis added). Consequently, the Circuit Court of Dunklin County not only acquired jurisdiction to order an investigation and report, to inquire into the facts and to make a custody determination, it was required to determine these things by statute, with its focus being the "child's best interests."

No such investigation or report was ordered here. Nor was a determination made as to the best interests of the child. The court only considered whether Peggy's consent could be revoked.[8] The cause is remanded for further proceedings in accordance with § 453.110.2. In these proceedings, the court will be called upon to exercise its best judgment as to whether the best interest of this baby girl will be served by allowing her to remain with Michael and Becky, by returning her to Peggy and/or Dennis, or by some other disposition.

### IV.

### *Status of Initial Consent*

Prior to 1947, Missouri required continuing consent to adoption. In 1947, the statute was revised to state "the written consent to adoption by any parent, shall be valid and effectual even though such parent was under the age of twenty-one years at the time of the execution thereof, and *any such waiver or consent shall be irrevocable without leave of the court having jurisdiction of the child given at a hearing, notice of which has been given to all interested parties.*" § 453.050. In 1985, the italicized provision was omitted from § 453.050.

Two court of appeals' cases, decided since the 1985 amendment, have suggested that the Adoption Code still gives the court having jurisdiction of the child the discretionary power and responsibility of determining whether consent should be revoked. *In re Adoption of R.V.H.*, 824 S.W.2d 28, 30 (Mo.App.1991); *In re Adoption of ADA*, 789 S.W.2d 842, 844 (Mo.App.1990). We will assume, without deciding, that the Adoption Code permits the withdrawal or revocation of consent in certain limited circumstances.

The circuit court below concluded that the natural parent's consent to adoption given by Peggy was initially valid. This conclusion was supported by the factual record below. The court failed, however, to take into account the legal consequences that may result from a finding that both the prospective adoptive parents and the natural parent violated the terms of the Compact, of which Missouri and Arkansas are members. Section 210.620.

The record below suggests that the terms of the Compact were not met.[9] If so, Article IV of the Compact provides:

The sending, bringing, or causing to be sent or brought into any receiving state of a child in violation of the terms of this compact shall constitute a violation of the laws respecting the placement of children of both the state in which the sending agency is located or from which it sends or brings the child and of the receiving state. Such violation may be punished or subjected to penalty in either jurisdiction in.accordance with its laws. In addition to liability for any such punishment or penalty, any such violation shall constitute full and sufficient grounds for the suspension or revocation

---

8. Although Peggy's consent *may* have binding consequences regarding her own rights, it is not binding upon the Court in its determination of the best interest of the child. Neither does the consent establish that Peggy is unfit for custody. *State ex rel. L.L.B. v. Eiffert,* 775 S.W.2d 216, 220 (Mo.App.1989). Because the parties hereto failed to comply with Missouri law regarding the custody of the child, their various rights, admittedly substantial, are now subordinated to the best interests of the child.

9. There is no evidence in the record of compliance with Arkansas law, and Michael and Becky failed to follow the Arkansas Court's directive to obtain a proper Missouri order. Additionally, the Secretariat and at least one commentator have found that the Compact requires compliance with the sending state's laws as well. See Hartfield, 68 Neb.L.Rev. at 315–318, citing Compact Administrators' Manual 3.67 (Secretariat Opinion 37, (April 7, 1977)).

of any license, permit or other legal authorization held by the sending agency which empowers or allows it to place, or care for children.

The Supreme Court of Montana equated a parent's consent with "legal authorization" and used this provision to revoke a consent given by a natural mother to the termination of her parental rights and the adoption of her child. *In the Matter of T.M.M.,* 186 Mont. 460, 608 P.2d 130, 134 (1980).

This Court has been unable to find any other reported decisions that used Article IV as a basis to revoke a consent given by the natural mother. We believe, however, that this may be a proper remedy or sanction in appropriate circumstances. While the state has a profound interest in providing a mechanism for the adoption of children whose parents are unable or unwilling to care for them by persons who desire that responsibility, it has an equally significant interest in regulating adoptions in order to protect the interests of the child and to prevent the black market trade of children. *In re Adoption of No. 10087,* 324 Md. 394, 597 A.2d 456, 460 (1991). The Compact, like § 453.110.1, helps protect those interests. If all the parties involved with an adoption are aware that their actions may cause the revocation of a natural parent's consent, then they will be discouraged from circumventing the law.[10]

While we agree with the Supreme Court of Montana that revocation of a consent may be justified, the statute does not establish a per se rule. Instead, the statute provides that "any such violation shall constitute full and sufficient grounds for the suspension or revocation of any license, or permit, or other legal authorization held by the sending agency which empowers or allows it to place, or care for children." We believe this language allows the trial court discretion to enter an order as to the continuing validity of a consent and the custody of the child that it finds just in light of the facts and circumstances of the case before it. Again, at the pinnacle of the court's decision must be the child's best interests, not the interests of the other parties or even "public policy." These matters must be determined on a case-by-case basis. Revocation of consent based merely on Compact noncompliance could produce a potentially harsh result that may be contrary to the child's best interests.[11]

## V.

This case is remanded to the Circuit Court of Dunklin County for further proceedings in accordance with §§ 453.110.2 and 210.620, Article IV, and for issuance of such orders as are in the best interests of the child.

All concur.

---

10. One court has reduced attorney's fees in an effort to compel compliance with the Compact where the attorney knowingly disregarded the Compact. *In re Adoption of Calynn, M.G.,* 137 Misc.2d 1005, 523 N.Y.S.2d 729 (Sur.Ct.1987).

11. The interplay between §§ 453.030(6) and 211.444(3) is somewhat puzzling. Section 453.-030(6) prohibits a transfer of custody before a child is two days old, regardless of consent.

Section 211.444(3) states that the consent shall be valid and effective only after the child is at least two days old. Neither specifies a remedy in the event of noncompliance. Because transfer here was not proper and Article IV of the Interstate Compact on Child Placement contemplates the reexamination of consent in such circumstances, we do not address this problem.